Taylor, C. J.
The Court have looked into the cases of Smith v. Williamsa and Strecter v. Jones & Lane, heretofore decided, and are of opinion that the case now before them is *264 governed by them, and that consequently it is not competent for the plaintiffs to introduce parol testimony.

 Smith v. Williams.
The plaintiff brought an action on the case against the defendant for a breach of warranty, in the sale of a Negro. The declaration alleged, that the defendant warranted the Negro to be sound and healthy, as far as he knew: That the Negro was not sound and healthy, but afflicted with a rupture; and the defendant well knew he was so afflicted, at the time of the warranty and sale. The Jury found a verdict for the plaintiff, subject to the opinion of the court on a point of law reserved in the course of the trial, viz. Whether plaintiff could be permitted to prove such a warranty, when at the delivery of the Negro upon the sale, he received from the defendant a written instrument, but not under seal, in the following words:
“Know all men by these presents, that I, Obed Williams, of the county of Onslow and State of North-Carolina, planter, have bargained and sold unto David Smith, of the aforesaid county and state, one Negro fellow, named George, about 50 years of age, for and in consideration of three hundred dollars—do warrant and defend the said Negro against the lawful claim or claims of any person or persons whomsoever, unto him the said Smith, his heirs and assigns forever. Given under my hand this 29th January 1802.
“OBED WILLIAMS.
“Test,
“GEORGE ROAN.”
This instrument was duly proved, &c. The case was argued by Gaston for the plaintiff and Jocelyn for the defendant.
Taylor, C. J. The contract between the parties is stated at length in the special case, and appears to be both formally and substantially a bill of sale in all respects, except as to the want of a seal. This omission, however, is so important in the legal estimation of the paper, that it cannot be classed amongst specialties, but must remain a simple contract, on which no additional validity can be conferred by the subsequent registration. For I do not apprehend that any legal effect can be given to a paper by recording it, if that ceremony were not required by law.
*264 It might not however be an useless enquiry to consider, whether a paper containing nearly all the component parts of a specialty or deed, does not advance some greater claims to be respected in the scale of evidence, than such proofs of a contract as rest upon the memory of witnesses.
The solemnity of sealed instruments has been, from the earliest periods of the law, highly regarded; because the forms and ceremonies which accompany them, bespeak deliberation in the parties, and afford a safe ground for courts and juries, to ascertain and settle contested rights. This deliberation is inferred, not from any one circumstance attending the transaction, but as the general effect of the whole. Thus, in Plowde 308 B. “It is said that deeds are received as a lien final to the party making them, although he received no consideration, in respect of the deliberate mode in which they are supposed to be made and executed: for, 1st, the deed is prepared and drawn; then, the seal is affixed; and lastly, the contracting party delivers it, which is the consummation of his resolution.” Hence it appears that the law gives to deeds a respect and importance which it denies to any other contracts; not an empty and unmeaning respect, but such as properly arises from the existence of all those circumstances, which are calculated to fix and make authentic the contracts of men.
A contract cannot be a deed, if either it is not prepared and drawn; if the seal be not affixed, or if it be not delivered; but still if the deliberation is inferred from all these circumstances, it is fair reasoning to presume some degree of deliberation from any one or two of them, and to give to the paper, when it is introduced as evidence of the parties’ transactions, precisely *265 such credence as belongs to it, from its partaking more or less of the nature of a deed.
To give this rule a practical application to the case before us, the conclusion would be that, as the paper is without a seal, it cannot be a deed, and is therefore not decisive evidence as that instrument is; it is not a final lien; but as it possesses some of the essentials of a deed, viz. a formal draught and delivery; so far it shall be regarded as evidence of no slight nature of the fact it is introduced to establish.
The writers on the law of evidence have accordingly, in arranging the degrees of proof, placed written evidence of every kind higher in the scale of probability than unwritten; and notwithstanding the splendid eloquence of Cicero, to the contrary, in his declamation for the Poet Archias, the sages of our law have said that the fallibility of human memory weakens the effect of that testimony which the most upright mind, awfully impressed with the solemnity of an oath, may be disposed to give. Time wears away the distinct image and clear impression of the fact, and leaves in the mind, uncertain opinions, imperfect notions and vague surmises.
It is however contended by the plaintiffs, that contracts by our law are distinguished by speciality and by parol; that there is no third kind, and that whatever is not a specialty though it be in writing, is by parol. To establish this position a case is cited from 7. Term. Rep. 350, by which it is certainly proved. But the position being established, whether it will authorize the inference that parol evidence is admissible to vary and extend written evidence will best appear from an examination of the case, and from some attention to the question which called for the solution of the Court.
In the case cited, the declaration states that the defendant being indebted as administratrix, promised to pay when requested, and the judgment is against her generally. From this statement it is manifest, that the promise could not be extended beyond the consideration which was in another right as *266 administratrix, and made to bind the defendant personally. But in order to avoid this objection, it was contended that the promise being reduced to writing, the necessity of a consideration was dispensed with; and that the fact of its having been made in writing, might well be presumed after verdict if necessary to support the verdict, which latter position was conceded by the Court.
It is then perfectly evident that the only question in the case, was, whether nudum pactum could be alleged against a contract in writing, but without seal. That it could not, had been a notion entertained by several eminent men, and amongst the rest by the learned commentator, who observes that “every bond from the solemnity of the instrument, and every note from the subscription of the drawer carries with it internal evidence of a good consideration.” This doctrine however is inaccurate as applied to notes, when a suit is brought by the payee, and is only correct as between the indorsee and drawer. To demonstrate the propriety of the objection it became necessary for the court in Ram v. Hughes to enter into a definition and classification of contracts, into those by specialty and those by parol; to which latter division every contract belongs that is not sealed, though it may be written. Every written unsealed contract is therefore, in the strict language of legal precision, a parol contract, and like all others must be supported by a consideration.
But let it be considered, what the court would have said, if the case, instead of requiring them to give a precise and comprehensive definition of contracts, had called upon them for a description of the evidence by which contracts may be supported. They would, I apprehend, have said (because the law says so) the evidence which may be adduced in proof of a contract is threefold: 1st. Matter of record: 2nd. Specialty: 3rd. Unsealed writ ten evidence, or oral testimony. It is therefore necessary to distinguish between a contract, and the evidence of a contract, for though they may be and are, in many cases, identified; yet in legal language a parol contract *267 may be proved by written evidence. This is the case now before us, and this brings me to the question it presents, which I understand to be, Whether oral evidence is proper to extend and enlarge a contract which the parties have committed to writing. The first reflection that occurs to the mind upon the statement of the question, independent of any technical rules, is, that the parties by making a written memorial of their transaction, have implicitly agreed, that in the event of any future misunderstanding that writing shall be referred to, as the proof of their act and intention. That such obligations as arose from the paper, by just construction or legal intendment, should be valid and compulsory on them; but that they would not subject themselves to any stipulations beyond their contract: because if they meant to be bound by any such, they might have added them to the writing; and thus have given them a clearness, a force, and a direction, which they could not have by being trusted to the memory of a witness. For this end, the paper is signed, is witnessed, and is mistakenly recorded. But the plaintiff says, besides the warranty of title contained in the writing, the defendant made me another warranty as to the quality, which I can prove by a witness present at the time; and though he has complied with the warranty which was committed to writing, yet he has broken the one which was orally made, whence I am injured and seek compensation.
We are then to decide, Whether the law deems such proof admissible.
By the common law of England there were but few contracts necessary to be made in writing. Property lying in grant, as rights and future interests, and that sort of real property, to which the term incorporeal hereditament applies, must have been authenticated by deed. So the law remained until the stat. 32 H. 8, which, permitting a partial disposition of land by will, required the will to be in writing; but estates in land might still be conveyed by a symbolical delivery in presence of the neighbours, without any written instrument; though it was thought prudent to add security to *268 the transaction by the charter of feoffment. The statute of 29, Car. 2. commonly called the statute of frauds, has made writing and signing essential in a great variety of cases wherein they were not so before, and has certainly increased the necessity of caution in the English courts, with respect to the admission of verbal testimony to add to or alter written instruments, in cases coming within the provisions of that statute. That law being posterior to the dale of the charter under which this state was settled, has never had operation here; so that the common law remained unaltered until the year 1715, when a partial enactment was made of the provisions of the English statute.
The law must therefore be sought for in cases arising before the statute of frauds, and expositions upon that statute are no otherwise authoritative than as they affirm or recognize the ancient law. But I believe there can be no doubt that the rule is as ancient as any in the law of evidence, and that it existed before the necessity of reducing any act into writing was introduced.
In Plowden 345, Lord Dyer remarks “men’s deeds and wills, by which they settle their estates, are the laws which private men are allowed to make, and they are not to be altered even by the King, in his courts of law or conscience.”
In Rutland's case, 5 Coke, the court resolved that it was very inconvenient that matters in writing should be controlled by averment of parties, to be proved by uncertain testimony of slippery memory, and should be perilous to purchasers, farmers, &c.
The case of Meres & al. v. Ansell and others, in 3 Wilson 275, is directly in point upon the general principle, to shew that parol evidence shall not be admitted to contradict, disannul or substantially vary a written agreement.
*269 In 2 Atkins 384, Lord Hardwick says “it is not only contrary to the statute but to common law, to add anything to a written agreement by parol evidence.”
All written contracts, says Justice Ashurst, whether by deed or not, are intended to be standing evidence against the parties entering into them.—4 Term. Rep. 331.
1st Ves. jr. 241, parol evidence, to prove an agreement made upon the purchase of an annuity that it was redeemable, was rejected.
In a very recent case, in 7 Ves.211, we are furnished with the opinion of the present Master of the Rolls, Sir William Grant, than whom no Judge ever ranked higher in the estimation of his contemporaries, for profound and accurate knowledge in legal science, and a proper and discriminating application of well grounded principles to the cases which arise in judgment before him. His observations are, “By the rule of law, independent of the statute, parol evidence cannot be received to contradict a written agreement. To admit, it for the purpose of proving that the written instrument does not contain the real agreement, would be the same as receiving it for every purpose. It was for the purpose of shutting out that enquiry that the rule was adopted. Though the written instrument does not contain the terms, it must in contemplation of law, be taken to contain the agreement, as furnishing better evidence than any parol can supply.”
To these authorities I will add a decision of the circuit court of Pennsylvania, because it appears to be in principle the very case under consideration.
An action on the case was brought by the assignee of a bond against the assignor, upon a written assignment in general terms. The plaintiffs offered oral evidence to shew that the defendant had expressly guaranteed the payment of the bond. “Chase, Justice—You may explain, but you cannot alter a written contract by parol testimony. A case of explanation implies uncertainty, ambiguity and doubt upon the face of the instrument. But the proposition now is a plain case of alteration: that is an offer to prove by witnesses, that the assignor promised something beyond the plain words and meaning of his written contract. Such evidence is inadmissible, and has been so adjudged in the Supreme Court, in Clark v. Russel, 3 Dal. 415. *270 I grant that Chancery will not confine itself to the strict rule, in cases of fraud, and of trust. But we are sitting as Judges at common law; and I can perceive no reason to depart from it.”
I suppose the above authorities are amply sufficient to establish the proposition for which they are cited, and therefore I forbear to make any other references for that purpose. The exceptions to the general rule may be comprised under the heads of fraud, surprise, mistake, in cases of resulting trust, to rebut an equity, or to explain latent ambiguities; and there may also be some other cases which cannot be properly arranged under the titles specified. But as the case stated, is, in my opinion, directly opposed by the general rule, so far as it seeks to establish the proof of warranty as to quality by parol, and presents no fact to bring it within any of the exceptions, it would be needless to multiply authorities with respect to them.
As to the exception on the ground of fraud, I conceive that only occurs, where something intended to have been inserted in the contract, is omitted through the misrepresentation or unfair practice of one of the parties. In such case, the omission may be supplied by parol evidence. But there is no allegation here that the additional warranty was intended or understood by either party to have been inserted in the agreement.
It is also necessary to attend to the nature of the remedy adopted by the plaintiffs in this case, which is founded on the warranty and is in assumpsit. The questions arising upon the general issue are,whether the warrantywas made, and whether it was true at the time of making. For if the warranty were made, and not complied with, it is wholly immaterial whether the defect was - known to the seller or not, a principle that seems to extend to every Case where the plaintiff pro ceeds on the warranty. But in an action of deceit,tlie scienter or fraud is a material part of the declaration and must be brought home to the defendant to authorise a recovery against him, and in such case it seems from the authorities that proofs of the fraudulent conduct of the defendant may he drawn from sources, dehors the written contract. It cannot be contended that inserting the scienter in a declaration on the warranty, will convert it into an action of deceit founded on tort. In the latter action, the knowledge of the defendant, or something equivalent to it by which the fraud is charged, is a substantive allegation and must be proved; in the former, it is merely surplusage and may be rejected.